# IN THE COURT OF APPEALS OF IOWA

No. 22-1819
Filed February 22, 2023

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**D.W., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda D. Belcher, District Associate Judge.

A father appeals a permanency order entered in a child-in-need-of-assistance proceeding. **AFFIRMED.**

Joel E. Fenton of the Law Offices of Joel E. Fenton, PLC, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Bo Bradley Woolman, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Schumacher, J., and Doyle, *S.J.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DOYLE, Senior Judge.**

A father appeals a permanency order entered in a child-in-need-of-assistance (CINA) proceeding. The child was born in 2017. The child's parents were divorced in 2020. The decree granted the parents joint legal custody. The decree also awarded the mother physical care of the child and the father visitation. The child was adjudicated CINA in October 2021 based on allegations of sexual abuse by the father. We affirmed the adjudication on appeal. *In re E.W.*, No. 21-1736, 2022 WL 951082, at *1 (Iowa Ct. App. Mar. 30, 2022). When the problems the case permanency plan sought to address persisted one year later, the juvenile court changed the permanency goal from reunification to place the child in the mother's sole custody and authorized concurrent jurisdiction with the district court. We review permanency orders de novo. *See In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

**I. Permanency.**

The father first contests the juvenile court's permanency finding. He asks for more time to address and resolve the issues that led to the child's removal and argues he did not receive an adequate psychological evaluation. Under Iowa Code section 232.104(2)(b) (2022), the court can continue a child's placement for six months if it will eliminate the need for removal. But first, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The father's argument focuses on the results of two psychological evaluations: a psychosocial evaluation conducted in June and July 2022 and a psychosexual evaluation conducted in August 2022. The psychosocial evaluation revealed that the father "presented himself in a positive light by denying some minor faults and shortcomings that most people acknowledge" and made "an effort to present a socially acceptable appearance or a resistance to admitting personal shortcomings." Testing for the psychosexual evaluation resulted in scores that are statistically improbable, meaning that the father "provided little or no information for the reporting on his sexual problems, emotional characteristics, social history, behavioral history, sex knowledge or sex interests and history." The summary of the psychosexual evaluation states that the father "was not only deceptive, but highly deceptive, with an uncooperative response set," which compromised any results that could be useful. The father's deception during both evaluations led the evaluator to question his "true attitude towards any intervention and his cooperation/willingness to fully complete recommendations offered to him."

The father complains that the evaluation results were inadequate because the evaluator did not make recommendations about custody and visitation. He argues more time is needed to ensure he receives an adequate evaluation before the court makes a permanency finding.[1] We disagree. The results of the

---

[1] The State addresses this part of the father's argument as a challenge to the reasonable efforts made to return the child home. *See* Iowa Code § 232.102(7) (requiring that the State "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). If this issue is considered as raised on appeal, we concur with the juvenile court that the Iowa Department of Health and Human Services (DHHS) has made reasonable efforts at reunification.

psychosocial and psychosexual evaluations simply reflect the overall record, which shows the father is unwilling to cooperate with services aimed at addressing the sexual-abuse allegations against him.  The allegations resulted in a founded child abuse assessment and justify the child's removal and the CINA adjudication, which this court affirmed on appeal.  Yet the father denies abusing the child, does not believe the child made any statements about abuse, and claims the DHHS made up the allegations.  Although the father participates in therapy, it does not focus on the sexual-abuse allegations:

> Q. What sort of steps or services have you been enrolled in to prevent future sexual abuse from [the child]?  A. None.  I'm not a sexual abuser.
> Q. So is it your testimony today that you have not worked on the main adjudicatory reason we are here today?  A. I have no issue.
> . . . .
> Q. Has he [the therapist] worked with you on the specific allegations of sexual abuse in this case?  A. Not directly because he doesn't believe it happened either.
> Q. So what kinds of things are you working on with him? A. How to get through daily life with not thinking about alcohol and focusing on how am I going to get my daughter back.
> Q. So you focus on how to get your daughter back, but the issue of the sexual abuse allegations [is] not part of that equation? A. Because it didn't happen.

When testifying at the permanency hearing, the father avoided stating the nature of the allegations against him.[2]

---

[2] Although it was not the focus of the CINA proceedings, the father admitted he is an alcoholic.  Yet the father's testimony shows the same pattern of minimizing and evading about his alcohol abuse that the psychological testing detected:
> Q. Okay. And you admit that when you become intoxicated, you often become hostile, are easily triggered; correct?  A. I can.
> Q. Okay.  Sometimes throwing things and breaking stuff? A. It's in the past.
> Q. And you struggle with impulsive behaviors; is that correct? A. I guess I don't understand the question, impulsive behaviors.
> Q. Do you act on impulse?  A. Rarely.

For over one year, the father has not worked to resolve the issues that led to the child's removal. There is no basis for finding a six-month delay in permanency will eliminate the need for that removal. *In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (stating that insight into what the future holds can be gained from evidence of a parent's past performance). Because the statutory criteria for delaying permanency have not been met, we affirm the entry of the permanency order transferring the child to the mother's sole custody.

**II. Concurrent Jurisdiction.**

The father also contests the juvenile court's grant of concurrent jurisdiction. *See* Iowa Code § 232.3 (stating that the juvenile court has exclusive jurisdiction over custody, guardianship, or placement of a child involved in a CINA proceeding but may authorize concurrent jurisdiction in another court). We note that the father's attorney asked the court to grant concurrent jurisdiction at the May 2022 dispositional review hearing: "I've had sufficient time to discuss that with my client, and he's in agreement with concurrent jurisdiction being granted." Although the father had a new attorney at the next review hearing in August, he remained "in agreement with the recommendations and what's contained in the case plan, including concurrent jurisdiction." The father changed his position at the October permanency hearing to argue against concurrent jurisdiction. His argument intertwined with his request for more time:

> [I]t has been difficult in this case regarding figuring out what exactly the expectations are from my client because of staffing issues and

---

And despite admitting to the problem, the father made little progress with his alcohol abuse in the year since the CINA adjudication with the father admitting he drank alcohol the week of the permanency hearing and had not attended an Alcoholics Anonymous meeting in three weeks.

whatnot with the Department, but I feel like now we've got a new worker in place who should be able to utilize the time granted or hopefully granted by the Court in order to resolve these issues and these ambiguities that are present in the record right now. So I'm formally asking the Court to grant us the six-month extension to allow for all these services to take place. We'd certainly revisit the issue of concurrent jurisdiction at some point during that interval, but right now I think it's premature.

On appeal, the father contends concurrent jurisdiction is not in the child's best interest. *See In re R.G.*, 450 N.W.2d 823, 825 (Iowa 1990) (holding that the juvenile court has the discretion to authorize concurrent jurisdiction when doing so is in the child's best interest). He again notes that he asked for more time to receive additional services but the court granted concurrent jurisdiction instead, which he believes will result in "spirited litigation that will only complicate and prolong matters in another forum."

In granting concurrent jurisdiction, the juvenile court found the father and the child have a bond. Based on that bond, the court did not believe terminating the father's parental rights is in the child's best interest. But because of the unresolved allegations of sexual abuse against the father, the child could not be placed in his care. The court determined the child's best interest are served by transferring the child to the mother's sole custody. *See* Iowa Code § 232.104(2)(d)(1) (allowing the juvenile court to enter a permanency order transferring sole custody of the child from one parent to another if the child cannot be returned home but termination of the parent-child relationship is not in the child's best interest). By granting concurrent jurisdiction, the mother can seek modification of the dissolution decree to place the child in her sole custody. The mother and the father can litigate the question of what visitation or interaction with

the father would be in the child's best interest.  Until those issues are resolved, concurrent jurisdiction allows the juvenile court to ensure the child's best interests and safety needs are met.  We find no abuse of discretion.

**AFFIRMED.**